UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
OWENSBORO DIVISION
CASE NO. 4:11-CV-39

DAX R. WOMACK                                                                                    PLAINTIFF

v.

MATT CONLEY, ET AL.                                                                          DEFENDANTS

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court upon Defendants' Motion to Dismiss (Docket #19). Plaintiff has responded (Docket #26). Defendants have replied (Docket #27). This matter is now ripe for adjudication. For the following reasons, Defendants' motion is GRANTED IN PART and DENIED IN PART.

**BACKGROUND**

The following facts are taken solely from Plaintiff's Complaint and are accepted as true for purposes of this motion.

Plaintiff Dax Womack, a licensed practicing attorney, was appointed guardian *ad litem* in a Henderson Family Court case in 2007. During the course of representing his client, Plaintiff discovered that Defendants Stephanie Conley and her husband, Matt Conley, engaged in a scheme to conduct nonconsensual, warrantless searches of private residences. Stephanie Conley works for the Department of Community Based Services and would visit private residences and "advise the occupants of those residences that she had received an anonymous tip that the children at the residence were in danger." Compl., DN 1, ¶ 13. Matt Conley is a Kentucky State Police officer who would then enter these homes and conduct a search. Plaintiff reported these actions to a judge, and Matt and Stephanie Conley were reprimanded for their conduct.

In early 2008, Plaintiff came into contact with Matt Conley again. Plaintiff was involved

in the trial of Janice Wilson, who had been arrested by Matt Conley. The Complaint references a previous motion for suppression granted by the Kentucky Court of Appeals related to Mrs. Wilson's husband, August K. Wilson. The Kentucky Court of Appeals held the government failed to establish that Matt Conley's search of Wilson's residence was done pursuant to a valid search warrant. Mrs. Wilson was arrested after this decision was issued. She was ultimately acquitted of all charges except Possession of a Controlled Substance.

Plaintiff notes that he has questioned or challenged Matt Conley on numerous occasions regarding "attempts to seize property from individuals, alleged consensual searches and/or arrest's [sic], and situations in which the quantity of items seized and inventoried were substantially different than that stated by Plaintiff's clients." Compl., DN 1, ¶ 18.

Plaintiff recently represented a defendant charged with a number of serious offenses. Matt Conley was also the arresting officer in this case. The client's mother, Defendant Connie Knight, visited Plaintiff's office frequently proposing false alibis for her son or asking for money to pay bills. She also brought drugs to Plaintiff's office, which Plaintiff immediately disposed of and instructed her never to bring to his office again. On April 8, 2010, approximately a week before trial, Plaintiff gave Connie Knight fifty dollars following her pleas for money. "Unbeknownst to Plaintiff, Connie Knight was involved in a conspiracy, plan, scheme or artifice developed by Defendant Matt Conley and other Defendants to set the Plaintiff up to be charged criminally by transporting drugs into the Plaintiff's office." Compl., DN 1, ¶ 25.

Defendants conducted a two week investigation of Plaintiff to set up a "reverse buy" drug transaction.

> Matt Conley, Jason Kirk, Robert Schultz, William Markwell and David Crafton met on one or more occasions, consulted and conspired with one another, and

2

> developed a plan, scheme or artifice wherein they would manufacture an alleged "reverse buy" in order to portray the Plaintiff to be engaged in the illegal trafficking of drugs and charge Plaintiff criminally. Defendants provided Connie Knight with drugs so that she could bring them into Plaintiff's office and plant them. The "reverse buy" approach involves the Kentucky State Police providing drugs in a manner which supports their conspiracy, plan, scheme or artifice.

Compl., DN 1, ¶ 28. Plaintiff alleges that these defendants also conspired with one another to "intentionally ignore General Order No. OM-C-6," which is the procedure followed by Kentucky State Police officers relating to "reverse buy" drug transactions. Compl., DN 1, ¶¶ 30-31.

On April 8, 2010, Connie Knight attempted to contact Plaintiff approximately eighteen times. The following day she went to Plaintiff's office with drugs (Oxycodone) provided by Matt Conley in violation of General Order No. OM-C-6. At the time Connie Knight entered Plaintiff's office, she was wired with audio and video recording capabilities.

> Shortly after Defendant Connie Knight arrived at his office, she received a phone call from the Kentucky State Police. During the call, Connie Knight proceeded to throw the drugs on Plaintiff's desk at the direction of the Kentucky State Police while Plaintiff had his back turned and was not looking. This was captured on the video recording.
>
> Within seconds, Defendant Scott Ingram and Matt Conley stormed into his office without knocking or announcing and dislodged the handle from Plaintiff's office door.
>
> Defendants Scott Ingram and Matt Conley did not have a search warrant or arrest warrant.

Compl., DN 1, ¶¶ 37-38. Plaintiff was arrested and charged with Possession of a Controlled Substance, First Degree, and Prescription Drug not in Proper Container.

News services in the Western Kentucky area and Lexington, Kentucky, covered Plaintiff's arrest. Plaintiff also learned that Stephanie Conley interviewed one of Plaintiff's clients without permission at the Henderson County Detention Center. Plaintiff subpoenaed

Stephanie Conley to the Preliminary Hearing on June 11, 2010, to inquire why she had interviewed his client. "Defendant Stephanie Conley filed a frivolous bar complaint against Plaintiff which was summarily dismissed." Compl., DN 1, ¶ 44.

Shortly before the Preliminary Hearing, Matt Conley added six criminal charges to Plaintiff's case: three felony charges of Impersonating a Police Officer and three misdemeanor charges for Criminal Simulation. These charges were dismissed by the court at the Preliminary Hearing. Moreover, the Commonwealth's Attorney did not present the case to the Grand Jury for over five months. When Plaintiff filed a motion to dismiss the case, a special grand jury was convened.

> In furtherance of the conspiracy, Defendant Matt Conley made representations to the grand jury that were materially different than representations he made at the preliminary hearing and later at jury trial.

Compl., DN 1, ¶ 47. Plaintiff was tried by jury on March 3, March 4, and March 7, 2011, in Henderson Circuit Court. The jury returned a verdict of not guilty.

Defendant Matt Conley changed his sworn testimony about the "reverse buy" technique after meeting with the Commonwealth Attorney and discussing General Order #OM-C-6. This change "was an attempt to hide the intentional constitutional violations committed by the Defendants when they intentionally, maliciously and deliberately ignored the mandatory requirements of General Order #OM-C-6." Compl., DN 1, ¶ 51. Finally, the Complaint notes that, at trial, Commonwealth's Attorney William I. Markwell was called as a witness by the special prosecutor, and testified that he was shown tapes of Plaintiff before leaving on vacation. This meant that Markwell viewed tapes that pre-dated the tapes provided through discovery by the Commonwealth. "Thus, either William I. Markwell made a material representation or the

4

Commonwealth withheld exculpatory evidence from the Plaintiff." Compl., DN 1, ¶ 52.

Plaintiff filed suit in this Court on April 1, 2011. Plaintiff alleges that Defendants are liable under federal law for violations of 42 U.S.C. §§ 1983 and 1985 as well as under state law for "the torts of excessive execution, assault, false arrest, false imprisonment and defamation." Compl., DN 1, ¶ 65. Plaintiff also brings claims of malicious prosecution and tortious interference. Plaintiff seeks compensatory and punitive damages and attorney's fees. Defendants have moved to dismiss the Complaint. The Court now considers this motion.

## STANDARD

"When considering a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, the district court must accept all of the allegations in the complaint as true, and construe the complaint liberally in favor of the plaintiff." *Lawrence v. Chancery Court of Tenn.*, 188 F.3d 687, 691 (6th Cir. 1999) (citing *Miller v. Currie*, 50 F.3d 373, 377 (6th Cir. 1995)).

To survive a Rule 12(b)(6) motion to dismiss, the complaint must include "only enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1950 (2009). The "[f]actual allegations in the complaint must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true." *Twombly*, 550 U.S. at 555 (internal citation and quotation marks omitted). A plaintiff must allege sufficient factual allegations to give the defendant fair notice concerning the nature of the claim and the grounds upon which it rests. *Id.*

Furthermore, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause

of action will not do." *Id.* A court is not bound to accept "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Iqbal*, 129 S. Ct. at 1949.

**DISCUSSION**

Plaintiff's Complaint names all defendants in their official and individual capacities. Defendants Stephanie Conley, Jason Kirk, Robert Shoultz,[1] and Matt Conley in their official capacities request dismissal of the Complaint on all counts because they are entitled to Eleventh Amendment and official immunity. Defendants Stephanie Conley, Jason Kirk, and Robert Shoultz in their individual capacities request dismissal of the Complaint in its entirety because Plaintiff has failed to state a claim for relief. Defendant Matt Conley in his individual capacity seeks dismissal of all of Plaintiff's claims except Plaintiff's Fourth Amendment claims for unlawful search and seizure and his state law claims for false arrest and malicious prosecution. Defendants Connie Knight, Scott Ingram, and David Crafton are represented by separate counsel and have not filed motions to dismiss. Thus, the Court's reference to "Defendants" for purposes of this motion shall refer only to Stephanie Conley, Jason Kirk, Robert Shoultz, and Matt Conley.

**I.     Official Capacity**

Defendants argue that the claims against them in their official capacities are "barred by governmental immunity." "[A] suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office." *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989). The Eleventh Amendment bars suits brought in federal court against a state and its agencies unless the state has waived its sovereign immunity or

---

[1] Defendant Robert Shoultz is identified in the Complaint as Robert Schultz.

consented to be sued in federal court. *Id.* at 66; *see also Abick v. Michigan*, 803 F.2d 874, 876-77 (6th Cir.1986). The Eleventh Amendment is applicable when a party sues a state's officials or employees for monetary damages regarding their official actions. *See Doe v. Wigginton*, 21 F.3d 733, 736-37 (6th Cir. 1994). A suit is therefore barred if the judgment would be satisfied from the state's treasury making the state the real party in interest. *Id.*

Plaintiff has sued Defendants in their official and individual capacities. Defendants Shoultz, Kirk, and Matt Conley are employed by the Department of Kentucky State Police while Defendant Stephanie Conley is employed by the Department of Community Based Services, a department within Kentucky's Cabinet for Health and Family Services. Thus, an action against Defendants in their official capacities is, in effect, a claim against the state. *Will v. Mich. Dep't of State Police*, 491 U.S. 58,71 (1989) (holding "a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office. As such, it is no different from a suit against the State itself."). Therefore, the claims against Defendants in their official capacities are barred and the motion to dismiss is granted as to these claims.

**III.    Individual Capacity**

The Complaint asserts state and federal claims against all Defendants in their individual capacities. Specifically, the Complaint alleges federal violations of 42 U.S.C. §§ 1983 and 1985. Plaintiff alleges that Defendants violated his Fourth, Fifth, and Fourteenth Amendment rights. In addition, the Complaint asserts claims of supervisory liability, failure to train and conspiracy. Plaintiff seeks recovery under state law for excessive execution, assault, false arrest, false imprisonment, defamation, malicious prosecution, and interference with existing and prospective contractual relations. Although Defendants' motion indicates that Defendants seek dismissal of

the Complaint in its entirety (with the exception of the Fourth Amendment, false arrest, and malicious prosecution claims against Matt Conley), the motion to dismiss only specifically addresses the conspiracy, supervisory liability, defamation, and interference with contract claims. Accordingly, the Court limits its analysis to these four claims.

A. *Conspiracy*

First, Defendants seek to dismiss Plaintiff's conspiracy claim, arguing that Plaintiff has failed to allege a viable conspiracy to violate Plaintiff's civil rights.

> A civil conspiracy under § 1983 is "an agreement between two or more persons to injure another by unlawful action." *Revis v. Meldrum*, 489 F.3d 273, 290 (6th Cir.2007). To successfully plead a civil conspiracy, Plaintiffs must allege that "(1) a single plan existed, (2) the conspirators shared a conspiratorial objective to deprive the Plaintiffs of their constitutional rights, and (3) an overt act was committed." *Id.* (citation omitted). "Express agreement among all the conspirators is not necessary to find the existence of a civil conspiracy [and] [e]ach conspirator need not have known all of the details of the illegal plan or all of the participants involved." *Hooks v. Hooks*, 771 F.2d 935, 944 (6th Cir.1985). "If a private party has conspired with state officials to violate constitutional rights, then that party qualifies as a state actor and may be held liable pursuant to § 1983." *Cooper v. Parrish*, 203 F.3d 937, 953 n.2 (6th Cir.2000) (citing *Wyatt v. Cole*, 504 U.S. 158, 168–69 (1992)).

*Pritchard v. Hamilton Twp. Bd. of Trustees*, No. 09-4594, 2011 WL 2039066, at *13 (6th Cir. May 25, 2011).

The Complaint alleges that Connie Knight and the law enforcement officers developed a plan "to set the Plaintiff up to be charged criminally by transporting drugs into the Plaintiff's office" which resulted in Plaintiff being falsely arrested and imprisoned. Compl., DN 1, ¶ 25. Thus, Plaintiff has sufficiently alleged that a single plan existed and that Defendants shared a general conspiratorial objective. The Complaint also alleges that the officers provided drugs to Connie Knight, who then went to Plaintiff's office to request money. Connie Knight was wired

8

with audio and video recording capabilities and the officers entered Plaintiff's office after the drugs were placed on Plaintiff's desk. Based on these factual allegations, the Court finds that the Complaint sufficiently alleges that an overt act was committed. Because the Complaint pleads a claim of conspiracy under § 1983 against Connie Knight and the police officers, Defendants' motion to dismiss is denied. Plaintiff's Complaint fails to allege, however, that Stephanie Conley played any role in the alleged conspiracy. Accordingly, the motion to dismiss the conspiracy claim against Stephanie Conley in her individual capacity is granted.

    B.    *Supervisory Liability*

Next, Defendants seek dismissal of Plaintiff's claim for supervisory liability under § 1983. Specifically, Defendants argue that the Complaint does not allege that Defendants Shoultz and Kirk had any direct involvement in any alleged unconstitutional conduct.

> Allegations of *respondeat superior* do not sustain a § 1983 claim against state employees in their individual capacities, meaning that officials are personally liable for damages under that statute "only for their own unconstitutional behavior." *Leach v. Shelby County Sheriff*, 891 F.2d 1241, 1246 (6th Cir.1989). That is, "even if a plaintiff can prove a violation of his constitutional rights, his § 1983 claim must fail against a supervisory official unless the supervisor encouraged the specific incident of misconduct or in some other way directly participated in it." *Cardinal v. Metrish*, 564 F.3d 794, 802-03 (6th Cir.2009) (citations and internal quotation marks omitted).

*Colvin v. Caruso*, 605 F.3d 282, 292 (6th Cir. 2010). A "mere failure to act" is insufficient for purposes of establishing supervisory liability. *Doe v. City of Roseville*, 296 F.3d 431, 440 (6th Cir. 2002).

The Complaint alleges that Defendants Shoultz and Kirk "met on one or more occasions" with Defendants Conley and Crafton to "develop[ ] a plan, scheme or artifice wherein they would manufacture an alleged 'reverse buy' in order to portray the Plaintiff to be engaged in the

9

illegal trafficking of drugs and charge Plaintiff criminally." Compl., DN 1, ¶ 28. The Court believes this is enough, for purposes of a motion to dismiss, to state a claim for § 1983 supervisory liability. Plaintiff has alleged that Defendants Shoultz and Kirk directly participated in meetings which resulted in the alleged constitutional violations. Accordingly, the motion to dismiss is denied as to this claim.

    C.    *Defamation*

The Complaint alleges that all Defendants have defamed Plaintiff. Under Kentucky law, four elements are necessary to establish a claim for defamation: "(1) defamatory language; (2) about the plaintiff; (3) which is published; and (4) which causes injury to reputation." *Biber v. Duplicator Sales & Serv., Inc.*, 155 S.W.3d 732, 736 (Ky. Ct. App. 2004) (citing *Columbia Sussex Corp. v. Hay*, 627 S.W.2d 270, 273 (Ky. Ct. App. 1981)); *see also Stringer v. Wal-Mart Stores, Inc.*, 151 S.W.3d 781, 793 (Ky. 2004).

First, Plaintiff argues that Stephanie Conley defamed Plaintiff by filing a frivolous bar complaint against him. Defendants assert that Stephanie Conley is entitled to absolute immunity from this claim because of the Kentucky Supreme Court's holding in *Morgan & Pottinger, Attorneys, P.S.C. v. Botts*, Nos. 2009-SC-000515-TG, 2009-SC-000751-TG, 2009-SC-000818-TG, 2011 WL 1620591, at *3 (Ky. Apr. 21, 2011). This case holds that the judicial statements privilege, which protects material, pertinent, and relevant communications made during a judicial proceeding, applies to the act of filing a bar complaint. *Id.* at *2-3. Both parties acknowledge, however, that this decision is not yet final or binding and is currently subject to a petition for rehearing. Accordingly, the Court declines to grant Defendants' motion to dismiss at this time.

10

Defendants also believe Plaintiff's Complaint fails to state any other defamation claim. Defendants assert that Plaintiff has failed to allege any facts to support a defamation claim and Defendants may be entitled to qualified immunity. Plaintiff's response to Defendants' motion to dismiss notes that "[d]iscovery will develop additional facts showing that these Defendants made and published false statements causing the Plaintiff substantial harm." Pl.'s Resp., DN 26, p. 2. The Court has reviewed the Complaint and concludes that Plaintiff has failed to state a claim for relief regarding defamation committed by any of the Defendants other than Stephanie Conley. It's unclear what language was defamatory, to whom it was published, and how it injured Plaintiff's reputation. Plaintiff may seek to amend his Complaint should discovery unveil additional facts, but at this time, Defendants' motion to dismiss is granted.

  D. *Interference with Prospective Advantage*

A claim for tortious interference with a prospective contractual relationship in Kentucky mirrors the requirements set forth in the Restatement (Second) of Torts § 766B. *See Nat'l Collegiate Athletic Ass'n v. Hornung*, 754 S.W.2d 855, 857 (Ky. 1988) (adopting Restatement (Second) of Torts §§ 766B, 767, and 773). Under § 766B,

> One who intentionally and improperly interferes with another's prospective contractual relation (except a contract to marry) is subject to liability to the other for the pecuniary harm resulting from loss of the benefits of the relation, whether the interference consists of
>
>  (a) inducing or otherwise causing a third person not to enter into a contract or continue the prospective relation or
>
>  (b) preventing the other from acquiring or continuing the prospective relation.

Restatement (Second) of Torts § 766B (1979); *see also Harrodsburg Indus. Warehousing, Inc. v. MIGS, LLC*, 182 S.W.3d 529, 534 (Ky. Ct. App. 2005). The Complaint alleges that "all of the

Defendants acted in a fashion that tortiously and intentionally interfered with Plaintiff's employment, employment opportunities and/or business opportunities, including but not limited to existing and prospective contractual relations." Compl., DN 1, ¶ 69. Again, Defendants argue that the Complaint fails to allege sufficient facts and that Defendants may be entitled to qualified immunity. The Court finds that the Complaint has set forth sufficient facts to support Plaintiff's claim. Plaintiff has alleged that Defendants' alleged actions caused interference with his clients and his business. Accordingly, Defendants' motion to dismiss this claim is denied.

## CONCLUSION

For the foregoing reasons, IT IS HEREBY ORDERED that Defendants' Motion to Dismiss is GRANTED IN PART and DENIED IN PART. Plaintiff's claims against all Defendants in their official capacities are dismissed with prejudice. The § 1983 conspiracy claim against Stephanie Conley in her individual capacity is dismissed without prejudice. Plaintiff's defamation claim against all Defendants in their individual capacities, except Stephanie Conley, is dismissed without prejudice.