UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
OWENSBORO DIVISION
CIVIL ACTION NO. 4:11-CV-00039-TBR

DAX R. WOMACK     Plaintiff

v.

MATT CONLEY;
STEPHANIE CONLEY;
CONNIE KNIGHT;
ROBERT SHOULTZ;
JASON KIRK;
SCOTT INGRAM;
DAVID CRAFTON;     Defendants

**MEMORANDUM OPINION AND ORDER**

Defendants Kentucky State Police Captain Robert Shoultz and Kentucky State Police Sergeant Jason Kirk moves, pursuant to Federal Rule of Evidence 702, for an order to be entered prohibiting Dr. Paul McCauley from testifying at the trial of this matter. (Docket No. 88.) Defendant Matt Conley has filed a response in support of this motion. (Docket No. 93.) Plaintiff Womack has responded. (Docket No. 99.) Defendants Shoultz and Kirk have replied. (Docket No. 113.) This matter is now ripe for adjudication. The Court is granting Defendants' motions for summary judgment. To the extent Plaintiff may be relying on any testimony of Dr. McCauley to respond to those motions, the Court felt it should issue an opinion on this motion.

For the reasons that follow and consistent with the below opinion, this motion is **GRANTED in part**, as to portions of testimony embracing ultimate issues to be

decided by the trier of fact and Court, and **DENIED in part**, as to testimony concerning Kentucky State Police General Orders and how the police practices/administration in this case compared to generally accepted practices.

BACKGROUND

Plaintiff Womack's only expert, Dr. Paul McCauley, seeks to testify against Defendants. Defendants argue that his testimony would not be relevant or reliable under Federal Rule of Evidence ("FRE") 702 and *Daubert v. Merrell Dow Pharmaceuticals Inc.,* 509 U.S. 579 (1993). McCauley's report states that he will "render a professional opinion regarding the police operations and practices involving the above-referenced parties which resulted in the arrest of Dax R. Womack on April 9, 2010." (Docket No. 99-3, Page 2-3.) Specifically, he will testify a General Order applied and was violated, probable cause did not exist, Plaintiff's constitutional rights were violated, compare the police practices/administration in this case to generally accepted practices, and comment on the credibility of people involved in the case.

STANDARD

The admissibility of expert testimony is governed by Rule 702 of the Federal Rules of Evidence. Rule 702 provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;

> (c) the testimony is the product of reliable principles and methods; and
> 
> (d) the expert has reliably applied the principles and methods to the facts of the case.

In *Daubert v. Merrell Dow Pharm., Inc.*, "the Supreme Court established a general gatekeeping obligation for trial courts to exclude from trial expert testimony that is unreliable and irrelevant." *Conwood Co. v. U.S. Tobacco Co.*, 290 F.3d 768, 792 (6th Cir. 2002) (alteration and internal quotation marks omitted) (quoting *Hardyman v. Norfolk & W. Ry. Co.*, 243 F.3d 255, 260 (6th Cir. 2001) (applying *Daubert*, 509 U.S. 579, 597 (1993); *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147-48 (1999))). The Court must determine whether evidence proffered under Rule 702 "both rests on a reliable foundation and is relevant to the task at hand." *Daubert*, 509 U.S. at 597. A key consideration is "whether the reasoning or methodology underlying the testimony is sufficiently valid." *Id.* at 592-93. The Supreme Court advises that the inquiry is "a flexible one," and that "[t]he focus . . . must be solely on principles and methodology, not on the conclusions they generate." *Id.* at 594-95. A testifying expert must "employ[] in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kumho Tire*, 526 U.S. at 152. But *Daubert* did not impose any new standard, other than that already found in the Federal Rules of Evidence, for the admissibility of the testimony of nonscientific expert witnesses. *See id.*; *see also United States v. Velasquez*, 64 F.3d 844, 850 (3d Cir. 1995) (noting that *Daubert* did not impose a new standard other than what is already set out in the Federal Rules of Evidence "for the admissibility of the testimony of nonscientific experts such

as . . . real estate appraisers"); *United States v. Starzecpyzel*, 880 F. Supp. 1027, 1040-41 (S.D.N.Y. 1995) (same).

Despite that there is no "definitive checklist or test" for meeting the standard of Rule 702, *Daubert* laid out a number of factors that typically "bear on the inquiry," including: whether the theory or method in question "can be (and has been) tested," whether it "has been subjected to peer review and publication," whether it has a "known or potential rate of error," and whether the theory or technique enjoys "general acceptance" in the "relevant scientific community." *Daubert*, 509 U.S. at 593-94. Although *Daubert* addressed scientific evidence, the Supreme Court in *Kuhmo Tire Co. v. Carmichael* held that a trial court may consider the *Daubert* factors for all types of expert evidence. *Kumho Tire*, 526 U.S. at 150. Thus, the *Daubert* factors are nonexhaustive and may not be pertinent in cases where "the relevant reliability concerns . . . focus upon personal knowledge or experience."[1] *Id.*; *see also First Tenn. Bank Nat'l Ass'n v. Barreto*, 268 F.3d 319, 335 (6th Cir. 2001).

---

[1] The Advisory Committee Notes to Rule 702 reinforce this position:

> Some types of expert testimony will be more objectively verifiable, and subject to the expectations of falsifiability, peer review, and publication, than others. Some types of expert testimony will not rely on anything like a scientific method, and so will have to be evaluated by reference to other standard principles attendant to the particular area of expertise. The trial judge in all cases of proffered expert testimony must find that it is properly grounded, well-reasoned, and not speculative before it can be admitted. The expert's testimony must be grounded in an accepted body of learning or experience in the expert's field, and the expert must explain how the conclusion is so grounded. *See, e.g.*, American College of Trial Lawyers, Standards and Procedures for Determining the Admissibility of Expert Testimony after *Daubert*, 157 F.R.D. 571, 579 (1994) ("[W]hether the testimony concerns economic principles, accounting standards, property

The Sixth Circuit has developed further guidance on Rule 702 by recently outlining a number of "[r]ed flags that caution against certifying an expert." *Newell Rubbermaid, Inc. v. Raymond Corp.*, 676 F.3d 521, 527 (6th Cir. 2012) (citing *Best v. Lowe's Home Ctrs., Inc.*, 563 F.3d 171, 177 (6th Cir. 2009)). These include "reliance on anecdotal evidence, improper extrapolation, failure to consider other possible causes, lack of testing, and subjectivity." *Id.* (citing *Best*, 563 F.3d at 177). Also, that a purported expert's testimony was prepared solely for litigation may also be grounds for exclusion. *Id.* (citing *Johnson v. Manitowoc Boom Trucks, Inc.*, 484 F.3d 426, 434 (6th Cir. 2007)).

Where the testimony of a proffered expert is challenged for insufficient "factual basis, data, principles, methods, or their application . . . the trial judge must determine whether the testimony has a reliable basis in the knowledge and experience of [his or her] discipline." *Kumho Tire*, 526 U.S. at 149 (quoting *Daubert*, 509 U.S. at 592). The Court need not necessarily hold a *Daubert* hearing to determine the admissibility of expert testimony but, nonetheless, must ensure that the disputed testimony is both relevant and reliable. *See Clay v. Ford Motor Co.*, 215 F.3d 663, 667 (6th Cir. 2000). Generally, "a trial judge . . . ha[s] considerable leeway in deciding whether particular expert testimony is reliable," *Kumho Tire*, 526 U.S. at 152; *accord Conwood*, 290 F.3d at 792; *Jahn v. Equine Servs., PSC*, 233 F.3d 382, 388 (6th Cir. 2000), and his decision whether to admit expert testimony is reviewed for abuse of discretion, *see Kuhmo Tire*,

---

valuation, or other non-scientific subjects, it should be evaluated by reference
to the 'knowledge and experience' of that particular field.").

Fed. R. Evid. 702 advisory committee's note (2000 amend.) (emphasis added).

526 U.S. at 142; *Newell Rubbermaid*, 676 F.3d at 527; *Hardyman*, 243 F.3d at 258; *see also Tamraz v. Lincoln Electric Co.*, 620 F.3d 665, 672 (6th Cir. 2010) ("Rule 702, we recognize, does not require anything approaching absolute certainty. And where one person sees speculation, we acknowledge, another may see knowledge, which is why the district court enjoys broad discretion over where to draw the line." (internal citations omitted)).

DISCUSSION

Defendants' View on McCauley's Credentials

In support of their motion, Defendants point to McCauley's credentials, or the lack thereof. He has never had the title of detective and his only law enforcement experience consists of four years of "part-time" service with a police department. He has not worked as a sworn police officer in the past 43 years or supervised any officers. He has never participated in a drug transaction.[2] While he has served as a criminology professor, he only taught criminal investigation classes as a substitute teacher. McCauley has only basic training: 40 hours of basic police training in 1966 (which did not involve narcotics training) and a 12-week "Her Majesty's Police College and Home Office Detective Course." Finally, he has not been certified to teach municipal police training courses for approximately 15 years.

---

[2] Plaintiff takes issue with Defendants' contention that McCauley has never participated in a drug transaction. Plaintiff points out that he has observed drug transactions and participated in planning them. He also was an instructor in an internal affairs seminar course involving drug transfers. Finally, he was a member of a council concerning joint drug task forces whose policies were implemented. (Docket No. 99, Page 3.)

Plaintiff's View on McCauley's Credentials

Plaintiff argues McCauley is qualified to offer the opinions contained in his Report and Supplement Report. McCauley was a member of the faculty of the Southern Police Institute and lectured command officers of the Kentucky State Police about police management and operational policy formulation, which included criminal investigations, internal affairs, inspection, and police accountability. He helped design what has become Pennsylvania's training standard for police officers, where he was a training officer and supervised the trainers.

McCauley has taken numerous investigative courses from the FBI and DEA. He previously was a member of the Western Law Enforcement Coordinating Council for the Western District of Pennsylvania, which was operated by the United States Attorney for the Western District of Pennsylvania and responsible for looking at joint drug task forces. He has an Associate's Degree in Public and Police Administration, Bachelor's Degree in Administration of Justice and Sociology, Masters of Science in Criminal Justice, and is a Doctor of Philosophy. Furthermore, he has testified in more than 800 cases in forty states involving policies, procedures, supervision, discipline, hiring, and retention. (Docket No. 99, Page 3-4.)

The Court's Analysis on Admissibility of McCauley's Testimony

A. Portions of Testimony that are Admissible and Inadmissible

The Court has read McCauley's report, (Docket No. 99-3), and supplemental report. (Docket No. 99-4.) To summarize, McCauley will testify generally about police

administration, specifically about ways in which officer discretion is limited. As to this case in particular, McCauley will testify that Kentucky State Police General Order OM-C-6 was applicable and was violated. He will also comment on the police practices/administration in this case compared to generally accepted police practices. He also alleges that Plaintiff's constitutional rights were violated and probable cause did not exist. Finally, he appears to accept Plaintiff's story as to how the events transpired (implicitly, and sometimes explicitly, commenting on the credibility of others).

The Court will not permit McCauley to testify to anything that will ultimately be a question of law or a jury question in this case, such as probable cause or whether Womack's constitutional rights were violated.[3] *See, e.g., Damiani v. Momme*, 2012 WL 1657920, *2 (E.D. Pa. May 11, 2012) ("Nonetheless, to allow Dr. McCauley to offer his opinion that the officers' conduct was unnecessary, punitive, and abusive answers the very question tasked to the jury, and the Court will not permit an expert to invade the province of the jury")). The Court will also not permit testimony as to who he believes is credible or what side of the story he believes is the truth.

However, the Court will permit him to testify as to whether or not General Order OM-C-6 applied and, if it did apply, whether it was violated.[4] The Court is aware that a violation of a General Order is not *per se* a constitutional violation. *Smith v. Freland*, 954 F.2d 343, 347-48 (6th Cir. 1992). While violation of the General Order is not a constitutional violation, Plaintiff seems to argue it is probative as to the existence of a

---

[3] "were the product of their reckless indifference to Mr. Womack's constitutional protections." (Docket No. 99-3; Page 8.) "was highly likely to . . . jeopardize Mr. Womack's legal-constitutional protections." *Id.* "the existence of probable cause was absent." (Docket No. 99-3, Page 11.)

[4] The Court notes that Defendant is free to, and it appears is planning to, present a qualified witness that will testify that this General Order was not applicable in this case.

conspiracy. The Court has dismissed the conspiracy charge. In doing so, it assumed the admissibility of Dr. McCauley's opinion that the General Order was applicable and violated. In the end, the Court found there was insufficient evidence to support the conspiracy claim.

The Court will also permit him to give his professional opinion on the police operations and administrative practices in this case, as compared with generally accepted police administrative and operational practices. The Court considered this evidence in ruling on the motions for summary judgment.

Essentially, the Court will permit Dr. McCauley to testify as long as his opinions are related to police procedures and do not invade the province of the jury by embracing an ultimate issue to be decided by the trier of fact or the province of the Court by commenting on an issue of law. *See, e.g., Nance v. City of Newark*, 2010 WL 2483747, *5 (D.N.J. June 4, 2010).[5] Accordingly, Dr. McCauley will be permitted to testify in accordance with this Order.

B. Addressing the Parties' Substantive Arguments

Because the Court has already stated it will not be allowing certain portions of McCauley's testimony, many of the parties' substantive arguments no longer need to be addressed. However, to the extent the arguments concern any of the admissible portions

---

[5] "Other portions of Dr. McCauley's report, however, are appropriate. For example he catalogues what he considers to be disparate treatment experienced by Nance (e.g., differences in the discipline experienced by Nance when compared to other officers). Dr. McCauley also assesses whether the department violated internal affairs procedures under the facts of this case, and observes the results of the various charges brought against Plaintiff. Under similar facts, Dr. McCauley has been permitted to testify." *Nance v. City of Newark*, 2010 WL 2483747, *5 (D.N.J. June 4, 2010) (citations omitted)).

of the testimony--the General Order and comparison with generally accepted police practices--the Court will address those arguments.

Defendants argue the issue of McCauley's qualification is very similar to the qualification issue presented in *Berry v. City of Detroit*, 25 F.3d 1342 (6th Cir. 1994), and therefore McCauley should not be permitted to testify.[6] They argue the takeaway from that case is that an expert either needs formal training or firsthand experience to lay the foundation for his testimony. *Id.* at 1349. Defendants assert that McCauley, like Postill from *Berry*, may be qualified in the "abstract," but he is not qualified to give an opinion on specific issues such as the interpretation and application of Kentucky State Police General Orders, narcotics investigation, or appropriate supervision of narcotics detectives. *Id.* at 1351-52.

On the other hand, Plaintiff cites cases where experts similar to McCauley, ones with more academic backgrounds, were permitted to testify about a discrete aspect of police practices. *Champion v. Outlook Nashville, Inc.*, 380 F.3d 893, 908 (6th Cir. 2004); *Toon v. City of Hopkinsville*, 5:09-CV-37 (W.D. Ky. April 14, 2011) (permitting university professor to testify that the amount of force used likely exceeded police department policies, but not to issues of probable cause and excessive force). We agree with Plaintiff, similar to the expert in *Toon*, McCauley's education, teaching, memberships, publications, and prior qualifications as an expert in cases involving issues in the instant case make him qualified to give certain portions of his testimony.

---

[6] Defendants also assert that McCauley's opinion is not based on sufficient facts or data because he did not review the preliminary hearing, grand jury hearing, or the criminal trial of Plaintiff Womack. (Docket No. 88, Page 13.) This is not a basis to object to his testimony, other than the probable cause portion. However, as discussed above, because the Court will not permit McCauley to testify as to probable cause, it is not necessary for the Court to consider this objection by Defendants.

*Champion* demonstrates why *Berry* is not applicable in this situation and was a unique case:

> We did not hold that an individual cannot ever testify as an expert about some aspect of police affairs. Rather, the holding in *Berry* reasoned that unqualified individuals could not broadly testify about an area in which they possessed no specialized knowledge. While "police practices" in the broadest sense of the phrase may not be a field, surely criminology is.
>
> Indeed, the chief reason for our decision in *Berry* was that the expert's credentials demonstrated that he had no specific expertise about police activities. He had limited experience, given that he was appointed as a deputy sheriff, a post that required almost no qualifications, and he had been fired twice from the position. Furthermore, he lacked any formal training or experience on the subject of criminology or police actions. Compounding the problem was his ungrounded and methodologically flawed testimony regarding what effect the City of Detroit's procedural shortcomings would have upon the future conduct of 5,000 police officers who would be confronted with a diverse and unpredictable array of situations in which force would be used.

*Champion*, 380 F.3d 893, 908 (6th Cir. 2004). *Champion* also held it permissible for an expert to testify about the specific training the officers received and that the officers' alleged actions violated nationally recognized police standards governing excessive force. *Id.* at 908-09.

Defendant's reply brief attempts to distinguish *Champion* by pointing out that the expert had experience that was specific to the issue before the Court—the use of force during the course of an arrest.[7] (Docket No. 113, Page 3.) Essentially, Defendant would require an expert to have experience specific to the issue before the Court. In

---

[7] Defendants make the same argument with respect to the *Toon* case (involving excessive force): "As opposed to McCauley, Cox had taught several courses including Supervision of Police Personnel, Police Administration, Human Relations in Policing and Police Related violence. Unlike McCauley, Cox had taught areas which were specific to the issue before the Court." (Docket No. 113, Page 4.) However, as established below, McCauley is sufficiently qualified for certain portions of his testimony.

this case, Defendant would require that an expert have specific experience in narcotics investigation and the supervision of narcotics detectives.[8]

To some degree, this analysis all depends on how one delineates the "specific issue" before the Court and the requisite "experience" that issue requires. While arguably not as "ideal" an expert as the one in *Champion*, the Court finds McCauley's credentials are nonetheless "specific" enough to qualify him to testify. Nothing in *Champion* requires the high level of "specific" experiences Defendant argues for, namely experience in narcotics investigation and the supervision of narcotics detectives. In fact, McCauley possesses the "formal training or experience on the subject of criminology or police actions" that *Champion* implied is sufficient for purposes of expert qualification in this area. *Champion*, 380 F.3d 893, 908 (6th Cir. 2004).

The exact experience Defendant argues for is unnecessary for testimony on whether a General Order applied and was complied with. That is a determination management/supervisors of law enforcement would presumably make on a daily basis, and one that McCauley is qualified to comment on given his experiences. Furthermore, he is also qualified to comment on how the actions in this case compared with generally accepted police practices, given his expertise in police management and supervision.

While declining to list all of his relevant credentials and experiences that assisted the Court in making its determination, the Court notes McCauley has been a Professor of Criminology and Chairman of a Department of Criminology. He has been a Captain with the Highspire Borough Police and a diplomate of the American Board of

---

[8] Defendants also assert McCauley's opinion is not based on a reliable methodology. (Docket No. 88, Page 14.) However, since the Court will only allow testimony as to the General Order and comparison of the police practices in this case to generally accepted practices, that argument is not applicable.

Law Enforcement Experts. He has lectured on police management and been on several task forces/boards for the purpose of implementing law enforcement policies. He also has written and lectured on police management and policies. (*See* Docket No. 88-2.)

## CONCLUSION

Accordingly, consistent with the above opinion, the Court will **GRANT in part**, as to portions of testimony embracing ultimate issues to be decided by the trier of fact or the Court, and **DENY in part**, as to testimony concerning Kentucky State Police General Orders and how the police practices/administration in this case compared to generally accepted practices, consistent with this opinion.

IT IS SO ORDERED.

Date:

cc:    Counsel